# EXHIBIT 2

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

## ASSIGNMENT AND ASSUMPTION AGREEMENT
## UPON TRANSFER TO AN AUTHORIZED FRANCHISEE

This Assignment and Assumption Agreement and Upon Transfer To An Authorized Franchisee (the "Agreement") is made this 4th day of April, 2024, by and between A1 Kitchen & Bath Franchising, LLC, a North Carolina limited liability company, with its principal place of business at 107 Parr Drive, Huntersville, North Carolina 28078 ("Franchisor") and Joel Senger, individual with its principal place of business at 241 N Colony Dr., Edgewood, Kentucky 41017 (referred to herein as "Franchisee" "Owner" and "Guarantor") (Franchisee, Owner, and Guarantor jointly referred to as "Assignor"), and Proverbs 163 Ventures, Inc., an Kentucky corporation (the "Assignee").

### BACKGROUND

A.      Franchisee entered into three (3) Franchise Agreements TD0023 - 0025 with Franchisor dated October 20, 2023 (the "Franchise Agreements") for a The Designery franchise to be operated within the territory set forth in the Franchise Agreements (the "Franchised Business").

B.      Assignor, by transferring its ownership interest in Franchisee, desires to assign all Assignor's rights and obligations under the Franchise Agreement to Assignee. Assignee desires to obtain these rights and is willing to assume these obligations.

C.      Franchisor is willing to permit the assignment and assumption.

Now therefore, in consideration of the mutual promises and consents provided in this Agreement, and other good and valuable consideration, the sufficiency and adequacy of which the parties hereby acknowledge, the parties agree as follows:

### TERMS OF AGREEMENT

1.      **Assignment and Assumption**. Subject to the terms of this Agreement, Assignor assigns to Assignee, by transfer of its ownership interest in Franchisee, all of Assignor's right, title and interest in the Franchise Agreements (including Amendments, ancillary agreements and Multi-Unit Addendum) and delegates to Assignee all of Assignor's obligations under the Franchise Agreements arising from and after the Effective Date. Assignee agrees to assume and perform all of Assignor's obligations under the Franchise Agreements arising from and after the Effective Date. Simultaneously with the Assignment contemplated herein, the assigned Franchise Agreements will be amended to specify Proverbs 163 Ventures, Inc. is the Franchisee.

2.      **No Discharge of Assignor**. The assignment by Assignor of Assignor's rights and obligations under the Franchise Agreements will not relieve Assignor or Franchisee of obligations under the Franchise Agreements that accrue before the Effective Date or after the Effective Date that are related to events occurring before the effective date of the transfer. Notwithstanding the foregoing, Assignor must report all revenue collected prior to the Effective Date and pay all royalties due thereon, on or before the 10th of the month (or the next business day after the 10th if the 10th is not a business day) following the month in which the assignment transaction closes. Assignee will be responsible for reporting all amounts collected after the Effective Date and paying all royalties on amounts collected after the Effective Date in accordance with the Franchise Agreements between Assignee and Franchisor. In addition, if assignor collects any amounts after the Effective Date that relate to operation of the business prior to (or after) the Effective date, Assignor must report all such collections to Franchisor on a monthly basis consistent with terms of the Franchise Agreements in

effect as of the Effective Date and Assignor must pay royalties on those collections on a monthly basis consistent with terms of the Franchise Agreements in effect as of the Effective Date.

3. **Transfer Fees**.  Because this is a transfer from an individual to a business entity, no transfer fee applies.

4. **Preconditions to Consent.**  In order to cause Franchisor to consent to such sale, waive such right of first refusal, and to gain other benefits to the Assignees and the Assignors, the Assignees and Assignors have agreed to their respective commitments under this Consent.

5. **Consent and Waiver of Right of First Refusal**. As of the Effective Date, Franchisor consents to the transfer of the rights and obligations of the Assignor in and to the Franchisee, the Franchise Agreements, and the related franchised business to the Assignee.  Assignor confirms that they have transferred all rights (whether held personally or otherwise) in and to the Franchisee, the Franchise Agreements, and the related franchise business to Assignee, together with all rights in and to all real and personal property used in the operations of the Franchise and the related Franchised Business.  Franchisor hereby declines to exercise its right of first refusal with regard to the proposed transfer contemplated between the Assignee and Assignor.

6. **Acknowledgment**. Assignor, Assignee and Franchisor agree that the assignment of Assignor's Franchised Business and the Franchise Agreements (and the related agreements, if any) to Assignee were not affected by or through Franchisor, and that Franchisor's activities in connection therewith were limited to the exercise of its right of approval under the Franchise Agreements.

7. **Limited Release by Assignee**. Assignee, for itself and its officers, directors, stockholders, members, managers, partners, agents, heirs, executors, administrators, legal successors and assigns, release and forever discharge A1 Kitchen & Bath Franchising, LLC, and DDL Investments, Inc., and each of their respective parents, subsidiaries and affiliates, and the respective officers, directors, stockholders, members, managers, partners, employees, agents, attorneys, contractors, legal successors and assigns of each of the forgoing entities in their corporate and individual capacities ("Franchisor-Related Persons/Entities"), of and from all manner of actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, agreements, controversies, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law, admiralty or in equity, that Assignee and/or Assignee's officers, directors, stockholders, members, managers, partners, agents, heirs, executors, administrators, legal successors and assigns ever had, now has, or that they hereafter can or may have for, on or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the Effective Date, including, without limitation, claims arising under federal, state and local laws, rules and ordinances that are related to the assignment of the Franchise Agreements ("Assignee Claims"). For the absence of confusion, the Assignee Claims do not relate to any claim of Assignee (or any person claiming through Assignee) arising under the Franchise Agreements following the Effective Date.

Being fully informed, Assignee(s) waive any rights on, and acknowledges that this release extends to all Assignee Claims Assignees have or might have against Franchisor-Related Persons/Entities, whether known or unknown.

8. **General Release by Assignor/Franchisee and Guarantors**. The Assignor, for themselves, Franchisee, and, as applicable, their officers, directors, stockholders, members, managers, partners, agents, heirs, executors, administrators, legal successors and assigns, release and forever discharge the Franchisor-Related Persons/Entities, of and from all manner of actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, agreements, controversies, promises, variances, trespasses, damages, judgments, executions, claims and demands

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

whatsoever, in law, admiralty or in equity, that Assignor and/or Assignor's officers, directors, stockholders, members, managers, partners, agents, heirs, executors, administrators, legal successors and assigns, ever had, now has, or that they hereafter can or may have for, on or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of this Agreement, including, without limitation, claims arising under federal, state and local laws, rules and ordinances ("Assignor Claims").

Being fully informed, Assignor(s) waive any rights on, and acknowledge(s) that this release extends to all Assignor Claims Assignors have or might have against Franchisor-Related Persons/Entities, whether known or unknown.

9.     **Assumption of Risk**.  The Guarantor and Assignor/Franchisee(s) expressly assume the risk of any mistake of fact or fact of which they may be unaware or that the true facts may be other than any facts now known or believed to exist by Guarantor or Assignor/Franchisee(s), and it is the Guarantor's, Assignor's, and Franchisee's intention to forever settle, adjust and compromise any and all present and/or future disputes with respect to all matters from the beginning of time to the date of this document finally and forever and without regard to who may or may not have been correct in their understanding of the facts, law or otherwise. All releases given by the Guarantor and Assignor/Franchisee are intended to constitute a full, complete, unconditional and immediate substitution for any and all rights, claims, demands and causes of action whatsoever which exist, or might have existed, on the date of this document. The Guarantor and Assignor/Franchisee represent and warrant that they have made such independent investigation of the facts, law and otherwise pertaining to all matters discussed, referred to or released in or by this document as the Guarantor and Assignor/Franchisee, in each of their independent judgment, believe necessary or appropriate. The Guarantor and Assignor/Franchisee have not relied on any statement, promise, representation or otherwise, whether of fact, law or otherwise, or lack of disclosure of any fact, law or otherwise, by the Franchisor-Related Persons/Entities or anyone else not expressly set forth herein, in executing this document and/or the related releases.

10.     **Amendment to Statement of Ownership**.  The Statement of Ownership to the Franchise Agreements is hereby amended by deleting it in its entirety and replacing it with the updated Statement of Ownership attached as Exhibit A to this Agreement.

11.     **Personal Guaranty**.  The Personal Guaranty to the Franchise Agreements is hereby amended by deleting it in its entirety and replacing it with the updated Personal Guaranty attached as Exhibit B to this Agreement.

12.     **Entire Agreement**. This Agreement represents the entire understanding and agreement between the parties with respect to the subject matter of this Agreement and supersedes all other negotiations, understandings and representations, if any, made by the parties with respect to the subject of this Agreement.

13.     **Assignment; Parties In Interest**. This Agreement is binding on and inures to the benefit of the parties and their respective successors and assigns, but this Agreement and the rights or obligations in this Agreement may not be assigned by any party without the other parties' consent, except that Franchisor has the right to assign this Agreement, to any person, firm, corporation or other entity, if the assignment is made with Franchisor's assignment of its rights under the Franchise Agreements. This Agreement is made for the benefit of the parties, and nothing in this Agreement is intended to or confers any benefit on any other person, association or entity. If the Assignors, Guarantors, Assignee or any third party, or anyone acting for or on behalf of such persons or any third party, or any of them, claim to have received, from Assignee, Assignor, or otherwise, any interest in any of the Assignee Claims or Assignor Claims, commence, join in, or in any manner seek relief through any suit (or otherwise) arising out of, based upon or relating to any of the Assignee Claims or Assignor Claims released hereunder or in any

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

manner asserts against all or any of the Franchisor-Related Persons/Entities relating to any of the Assignee Claims or Assignor Claims released hereunder, the Assignors (with regard to Assignor Claims), jointly and severally, and Assignees (with regard to Assignee Claims), jointly and severally, agree to pay all documented attorneys' fees and other documented costs incurred by any of the Franchisor-Related Persons/Entities in defending or otherwise responding to said suit or assertion directly to the Franchisor-Related Persons/Entities incurring such costs.

14. **Notices**. Notices required or permitted hereunder shall be given in writing and deemed given upon receipt when delivered personally or by overnight courier or by certified mail, return receipt requested, and addressed as follows (or as otherwise provided by a Party by written notice under this Section 14):

| | |
|---|---|
| Notice to Assignor: | Joel Senger<br>241 N Colony Dr.<br>Edgewood, Kentucky 41017 |
| Notice to Assignee: | Proverbs 163 Ventures, Inc.<br>241 N Colony Dr.<br>Edgewood, Kentucky 41017 |
| Notice to Franchisor: | A1 Kitchen & Bath Franchising, LLC<br>Attention:  Legal Department<br>107 Parr Drive<br>Huntersville, North Carolina 28078 |

15. **Authority/Agreement**. The Parties each warrant and represent to the other that they have the power and authority to enter into this Consent and will be bound by the terms hereof. NOTWITHSTANDING ANY OTHER WRITING, CONVERSATION, OR OTHER COMMUNICATION OUTSIDE OF THIS CONSENT, THE PARTIES ACKNOWLEDGE AND AGREE THAT THERE ARE NO DISPUTES AS TO THE TERMS OF THIS CONSENT, INCLUDING BUT NOT LIMITED TO THE SCOPE OF THE RELEASES OUTLINED IN SECTIONS 7 AND 8 ABOVE, ALL SUCH OBJECTIONS, IF ANY, BEING EXTINGUISHED AND OF NO FURTHER FORCE OR EFFECT, BY SIGNING THIS CONSENT.  ASSIGNORS REPRESENT, WARRANT, AGREE, AND ACKNOWLEDGE THAT THEY HAVE READ, UNDERSTAND, AND AGREE TO THE TERMS OF THIS SECTION 15 AND SECTION 8, AND THAT ASSIGNORS HAVE FURTHER CONSULTED WITH LEGAL COUNSEL WHO HAS READ THIS SECTION 15 AND SECTION 8, AND THAT ASSIGNORS UNDERSTAND AND FULLY AGREE TO THE TERMS OF SECTION 15 AND SECTION 8.  ASSIGNORS FURTHER REPRESENT THAT THEY HAVE HAD SUFFICIENT TIME AND OPPORTUNITY TO REVIEW THE TERMS OF THIS SECTION 15 AND SECTION 8, SEEK ADVICE FROM THEIR COUNSEL OR RECORD AND THAT THEY MAKE THE REPRESENTATIONS AND AGREE TO THESE TERMS FREELY.  ASSIGNEES REPRESENT, WARRANT, AGREE, AND ACKNOWLEDGE THAT THEY HAVE READ, UNDERSTAND, AND AGREE TO THE TERMS OF THIS SECTION 15 AND SECTION 7, AND THAT ASSIGNEES HAVE FURTHER CONSULTED WITH LEGAL COUNSEL WHO HAS READ THIS SECTION 15 AND SECTION 7, AND THAT ASSIGNEES UNDERSTAND AND FULLY AGREE TO THE TERMS OF SECTION 15 AND SECTION 7.  ASSIGNEES FURTHER REPRESENT THAT THEY HAVE HAD SUFFICIENT TIME AND OPPORTUNITY TO REVIEW THE TERMS OF THIS SECTION 15 AND SECTION 7, SEEK ADVICE FROM THEIR COUNSEL OR RECORD AND THAT THEY MAKE THE REPRESENTATIONS AND AGREE TO THESE TERMS FREELY.

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

16. **Binding Effect**. This Consent shall be binding upon and inure to the benefit of the Parties and, their respective administrators, representatives, heirs, successors, officers, directors, affiliates, successors, insurers and assigns.

17. **Dispute Resolution**. In the event of a dispute between the Parties relating to the interpretation or enforcement of this Consent the Parties agree that the dispute resolution provisions of the Franchise Agreements requiring pre-arbitration mediation and arbitration of disputes will apply and that all court proceedings, arbitration proceedings, mediation proceedings, lawsuits, court hearings and other hearings initiated by Franchisor or Assignors must and will be venued exclusively in Huntersville, North Carolina. The Parties do hereby agree and submit to personal jurisdiction in the State of North Carolina for the purposes of any suit, proceeding or hearing brought to enforce the terms of this Consent or to resolve any dispute or controversy arising under, as a result of, or in connection with the Consent or the parties' relationship. The parties do hereby agree and stipulate that any such suits, proceedings and hearings will be exclusively venued and held in Mecklenburg County, North Carolina. Assignors and Assignees waive any rights to contest such venue and jurisdiction and any claims that such venue and jurisdiction are invalid.

18. **Attorney Fees**. If any party retains the services of legal counsel to enforce the terms of this Agreement and prevails in such enforcement action, it shall be entitled to recover all reasonable and documented costs and expenses, including reasonable attorneys' fees incurred in enforcing the terms of this Agreement.

19. **Venue and Jurisdiction**. Assignor and Assignee agrees that they have and had a relationship with Franchisor at its offices in the State of North Carolina, and each Party agrees that, with the exception of Franchisor's right to seek injunctive relief in any appropriate jurisdiction, any action by or against Franchisor arising out of or relating to this Agreement shall be commenced and concluded in the State of North Carolina pursuant to the mediation, arbitration, and litigation venue and jurisdiction provisions of the Franchise Agreements. This Agreement shall be construed under the laws of the State of North Carolina, which laws shall control in the event of any conflict of law.

20. **Severability**. If any portion of this Consent is held invalid by a court or arbitrator, the remainder of this Consent shall be enforced in harmony with the purpose of this Consent and the intent of the Parties at the time of its making. If any provision of this Consent is held to be excessive as to time or scope, then that provision shall be interpreted as if its provisions reached only to the maximum extent enforceable under applicable law.

21. **Headings**. The headings used in this Consent are merely for identification of the substantive provisions; and to the extent they conflict with any substantive portion of this Consent, they are to be disregarded.

22. **Construction**. The Parties hereto hereby mutually acknowledge this Consent was mutually drafted and it shall not be construed for or against any Party on the basis of the drafting of any particular provision or the document of the whole, but rather shall be given a fair and reasonable interpretation, based on the plain language of this Consent in expressing the Parties' intent.

23. **Counterparts**. This Agreement may be executed in multiple counterparts by the various parties and the failure to have the signatures of all parties on a single Agreement shall not affect the validity or enforceability of any part of this Agreement against any party who executes any counterpart of the Agreement. Executed facsimile or other electronically delivered copies of this Agreement shall be deemed to be effective as original signatures.

24.    **Definitions**. Unless otherwise stated, all terms used in this Agreement have the same meaning as indicated in the Franchise Agreements.

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND ITS TERMS. I WOULD NOT SIGN THIS AGREEMENT IF I DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.**

IN WITNESS WHEREOF, the parties have set their hands and seals.

**FRANCHISOR:**

**A1 KITCHEN & BATH FRANCHISING, LLC**

_Jeffrey Dudan_
Jeffrey R. Dudan, President

**ASSIGNOR:**

Joel Senger, Individually

**ASSIGNEE:**

**PROVERBS 163 VENTURES, INC.**
a Kentucky corporation

Joel Senger, President and CEO

Page 6

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

**EXHIBIT A**
**STATEMENT OF OWNERSHIP**

**Franchisee:** Proverbs 163 Ventures, Inc.

**Form of Ownership**
**(Check One)**

☐  Individual  ☐  Sole Proprietorship  ☐  Limited Liability Company

☒  Corporation  ☐  General Partnership  ☐  Limited Partnership

  If a **Partnership**, provide name and address of each partner showing percentage owned, whether active in management, and indicate the state in which the partnership was formed.

  If a **Corporation**, provide the state and date of incorporation, the names and addresses of each officer and director, and list the names and addresses of every shareholder showing what percentage of stock is owned by each.

  If a **Limited Liability Company**, provide the state and date of formation, the name and address of the manager(s), and list the names and addresses of every member and the percentage of membership interest held by each member.

State and Date of Formation/Incorporation: Kentucky, October 25, 2023

**Management (managers, officers, board of directors, etc.):**

| Name | Title |
|---|---|
| Joel Senger | President and CEO |
|  |  |
|  |  |
|  |  |
|  |  |

**Members, Stockholders, Partners:**

| Name | Address | Percentage Owned |
|---|---|---|
| Joel Senger | 241 N Colony Drive Edgewood, Kentucky 41017 | 100% |
|  |  |  |
|  |  |  |

**Identification of Managing Owner**.  Your managing owner (the individual who will manage day to day operations of the business – cannot be a business entity) as of the Effective Date is Joel Senger. You may not change the managing owner without prior written approval.

**Identification of Designated Manager**.  Your Designated Manager, if applicable, as of the Effective Date is Joel Senger.  You may not change the Designated Manager without prior written approval.

This form is current and complete as of April 4, 2024.

**FRANCHISEE:**

**PROVERBS 163 VENTURES, INC.**
a Kentucky corporation

_____
Joel Senger, President and CEO

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

**EXHIBIT B**
**A1 KITCHEN & BATH FRANCHISING, LLC**
**FRANCHISE AGREEMENTS**

**PERSONAL GUARANTY**

NOTE: IF FRANCHISEE IS A CORPORATION, EACH OF FRANCHISEE'S SHAREHOLDERS AND THEIR SPOUSES MUST EXECUTE THE FOLLOWING UNDERTAKING. IF FRANCHISEE IS A PARTNERSHIP, EACH OF FRANCHISEE'S GENERAL PARTNERS AND THEIR SPOUSES MUST EXECUTE THE FOLLOWING UNDERTAKING. IF FRANCHISEE IS A LIMITED LIABILITY COMPANY, EACH OF FRANCHISEE'S MEMBERS AND MANAGERS AND THEIR SPOUSES MUST EXECUTE THE FOLLOWING UNDERTAKING.

Definition of "Franchisee:" Proverbs 163 Ventures, Inc.

| ☐ Individual | ☐ Sole Proprietorship | ☐ Limited Liability Company |
|---|---|---|
| ☒ Corporation | ☐ General Partnership | ☐ Limited Partnership |

**ARTICLE I**
**PERSONAL GUARANTY**

The undersigned persons (individually and collectively "you" or "Personal Guarantors") hereby represent to A1 Kitchen & Bath Franchising, LLC ("Franchisor") that you are all of the owners, shareholders, general partners, or members and managers, or the spouse of any such owner, shareholder, general partner, member or manager of the Franchisee. In consideration of the grant by Franchisor to Franchisee, as provided in the foregoing Franchise Agreements (the "Franchise Agreements"), each of you hereby agree, in consideration of benefits received and to be received by each of you, jointly and severally, and for yourselves, your heirs, legal representatives and assigns, to be firmly bound by all of the terms, provisions and conditions of the foregoing Franchise Agreements, and any other agreement between Franchisee and Franchisor and/or its affiliates, and do hereby unconditionally guarantee the full and timely performance by Franchisee of each and every obligation of Franchisee under the aforesaid Franchise Agreements or other agreement between Franchisor and Franchisee, including, without limitation, any indebtedness of Franchisee arising under or by virtue of the aforesaid Franchise Agreements and that you (jointly and individually) will not permit or cause any change in the percentage of Franchisee owned, directly or indirectly, by any person, without first obtaining the written consent of Franchisor prior to said proposed transfer, which consent must not be unreasonably withheld, and without first paying or causing to be paid to Franchisor the transfer fee provided for in said Franchise Agreements, if applicable, and without otherwise complying with the transfer provisions of the foregoing Franchise Agreements. You further agree to be bound by the in-term and post-term non-competition and non-solicitation covenants set forth in Section 17 of the Franchise Agreements, as well as all other covenants set forth in the Franchise Agreements, including, but not limited to, those concerning confidentiality (Section 5 of the Franchise Agreements) and indemnification (Section 13.2 of the Franchise Agreements). You agree that this personal guaranty (the "Guaranty") will be governed by the dispute resolution procedures set forth in Section 18 of the Franchise Agreements.

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

## ARTICLE II
## CONFIDENTIALITY

During the term of this Guaranty, you will receive information which Franchisor considers a trade secret and confidential information ("Confidential Information"). You shall not, during the term of this Guaranty or thereafter, communicate, divulge, or use for the benefit of any other person, partnership, association, corporation, or limited liability company any Confidential Information, including, without limitation, Franchisor's Operations Manual and its contents; price lists and standards and specifications for the Approved Products and Approved Services; standards and specifications related to Franchisor's integrated bookkeeping system; and other methods, techniques and know-how concerning the operation of a Franchised Business of which you may be apprised by virtue of your role as a Personal Guarantor of Franchisee.

## ARTICLE III
## NON-COMPETITION

1. **During the Term of the Franchise Agreements**. During the term of the Franchise Agreements, neither you nor your owners, principals, officers, directors, nor any members of your family or the family of your owners, officers, directors or principals may, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person or entity:

a. Own, maintain, engage in, be employed as an officer, director, principal of, lend money to, extend credit to, or have any interest in, any other business that, directly or indirectly, by itself or through licensees or franchisees, offers the Approved Products or Approved Services, or any other products and/or services authorized or offered for sale by System franchisees (a "Competitive Business") within the Designated Territory or the Designated Territory of any other System franchisee, provided that this Article III(1) does not apply to: (i) such person's ownership of a Franchised Business under a Franchise Agreements with Franchisor; or (ii) such person's ownership of a less than five percent (5%) legal or beneficial interest in any publicly-traded company providing such services;

b. Employ or seek to employ any person who is at that time employed by Franchisor, Franchisor's affiliates, or any other System franchisee, or otherwise directly or indirectly induce or seek to induce such person to leave his or her employment thereat; or

c. Solicit any current, former or prospective customer solicited by Franchisee's Franchised Business, or any other customer of whom Franchisee has become aware as a result of access to Franchisor's System, or other franchisees for any competitive purpose.

2. **After the Term of the Franchise Agreements**. For a period of two (2) years after the expiration and nonrenewal, transfer or termination of the Franchise Agreements, regardless of the cause, neither you, nor your owners, principals, officers, directors, nor any members of your family or the family of your owners, officers, directors, or principals may, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person or entity:

a. Own, maintain, engage in, be employed as an officer, director, principal of, lend money to, extend credit to, or have any interest in any Competitive Business: (i) within the Designated Territory; (ii) within a twenty-five (25)-mile radius of the Designated Territory of any other Franchised Business; or (iii) within a twenty-five (25)-mile radius of any System business operated by Franchisor or its affiliate, provided that this Article III(2) does not apply to: (A) such person's ownership of a Franchised Business under a Franchise Agreements with Franchisor; or  (B) such person's ownership of a less than

five percent (5%) legal or beneficial interest in any publicly-traded company providing services the same as or similar to a Competitive Business;

       b.     Employ or seek to employ any person who is at that time employed by Franchisor, Franchisor's affiliates, or any other System franchisee, or otherwise directly or indirectly induce or seek to induce such person to leave his or her employment thereat; or

       c.     Solicit any current, former or prospective customer solicited by Franchisee's Franchised Business or any other customer of whom Franchisee has become aware as a result of access to Franchisor's System, or other franchisees for any competitive purpose.

       3.    **Intent and Enforcement**.  It is the parties' intent that the provisions of this Article III be judicially enforced to the fullest extent permissible under applicable law. Accordingly, the parties agree that any reduction in scope or modification of any part of the noncompetition provisions contained herein shall not render any other part unenforceable. In the event of the actual or threatened breach of this Article III by you, any of your principals, or any members of their immediate family, Franchisor shall be entitled to an injunction restraining such person from any such actual or threatened breach. You agree that in the event of the actual or threatened breach of this Article III, Franchisor's harm will be irreparable, and that Franchisor has no adequate remedy at law to prevent such harm. You acknowledge and agree that each of you has previously worked or been gainfully employed in other careers and that the provisions of this Article III in no way prevent you from earning a living. You further acknowledge and agree that the time limitation of this Article III shall be tolled during any default under this Guaranty.

## ARTICLE IV
## DISPUTE RESOLUTION

       1.    **Acknowledgment**.  You acknowledge that this Guaranty is not a Franchise Agreements and does not confer upon you any rights to use the Franchisor's Proprietary Marks or its System.

       2.    **Governing Law**.  This Guaranty shall be deemed to have been made in and governed by the laws of the State of North Carolina, without any reference to North Carolina conflict of laws principles.

       3.    **Internal Dispute Resolution**.  Franchisee and Franchisor believe that it is important to resolve any disputes amicably, quickly, cost-effectively and professionally and to return to business as soon as possible. Franchisee and Franchisor have agreed that the provisions of Sections 3 and 4 of this Personal Guaranty support these mutual objectives and, therefore, agree as follows. Any disagreement, litigation, claim, dispute, suit, action, controversy or proceeding of any type whatsoever, including any claim for equitable relief and/or where Franchisee is acting as a "private attorney general" suing pursuant to a statutory claim or otherwise between or involving a Guarantor, Franchisee and/or Franchisor, on whatever theory and/or facts based, and whether or not arising out of this Guaranty (including any dispute or disagreement relating to arbitration, including the arbitrability of this Guaranty or any of its provisions), or offer, sale or negotiation of a The Designery Systems Franchise, or the relationship of the parties arising from the Franchise or from entering this Guaranty or the Franchise Agreements, or any claim that this Guaranty or the Franchise Agreements or any part thereof is invalid, illegal or otherwise voidable, void or unenforceable ("Dispute") will be processed in the following manner, Franchisee and Franchisor each expressly waiving all rights to any court proceeding, except as expressly provided below in Section 4.1. Personal Guarantor must first bring any claim or Dispute between Franchisee and Franchisor or Personal Guarantor and Franchisor to Franchisor's management after providing notice as set forth in Section 4.8 below. Personal Guarantor must exhaust this internal Dispute resolution procedure before Personal Guarantor may bring Personal Guarantor's Dispute before a third party. This agreement to first attempt resolution of Disputes internally shall survive termination or expiration of this Guaranty. Personal

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

Guarantor and Franchisor agree that the franchise relationship is unique and that as a result, it is important that anyone who serves as a mediator or arbitrator in a Dispute must have a minimum of seven (7) years' substantive experience in franchise law.

      4.     **Mediation**.  If Personal Guarantor and Franchisor are unable to resolve a Dispute using the internal Dispute resolution procedure, then Disputes, which are not first resolved through the internal Dispute resolution procedure set forth in Section 3 above must be submitted first to non-binding mediation in Mecklenburg County, North Carolina under the auspices of the American Arbitration Association ("AAA"), in accordance with AAA's Commercial Mediation Rules then in effect. The mediation will be conducted by one mediator with at least seven years of substantive experience in franchise law who will be appointed under the AAA's Commercial Mediation Rules and who will conduct the mediation in accordance with such rules. Mediation must be conducted on an individual, not a class-wide, basis; only Franchisor (and/or its affiliates and its and their respective owners, officers, directors, agents and employees) and Franchisee (and/or its Owners, guarantors, affiliates, officers, directors, agents and employees, if applicable) may be the parties to any mediation proceeding described in this Section, and no such mediation proceeding may be consolidated with any other mediation proceeding between Franchisor and any other person, corporation, limited liability company or partnership. Franchisor and Personal Guarantor agree that statements made by Franchisor, Personal Guarantor or any other party in any such mediation proceeding will not be admissible in any arbitration or other legal proceeding. If the mediation proceedings have been terminated either: (i) as the result of a written declaration of the mediator(s) that further mediation efforts are not worthwhile; or (ii) as a result of a written declaration by Franchisor, then, subject to the exclusions set forth in Section 4.1, all Disputes must be submitted to binding arbitration before one arbitrator of the AAA in accordance with its commercial arbitration rules. The arbitration will be conducted by one arbitrator with at least seven years of substantive experience in franchise law who will be appointed under the AAA's Commercial Arbitration Rules and who will conduct the arbitration in accordance with such rules. Except as provided in Section 4.1, no party may file litigation involving any Dispute unless it has complied with the mediation and arbitration provisions in this Article regarding that Dispute. "Filing litigation" includes asserting a counterclaim, third-party claim or other claim relating to a Dispute (irrespective of whether the party asserting the claim filed the legal action in which the claim is asserted). Franchisor's rights to mediation and arbitration, as set forth herein may be specifically enforced by Franchisor. Each party shall bear its own cost of mediation and arbitration and Franchisor and Personal Guarantor shall share mediation costs equally. This agreement to mediate and arbitrate shall survive any termination or expiration of this Guaranty.

      4.1     The parties shall not be required to first attempt to mediate or arbitrate a controversy, Dispute, or claim through mediation as set forth in this Section 4.1 if such controversy, Dispute, or claim concerns an allegation that a party has violated (or threatens to violate, or poses an imminent risk of violating):

          4.1.1     Any federally protected intellectual property rights in the Proprietary Marks, the System, or in any Confidential Information;

          4.1.2     Any claims pertaining to or arising out of any warranty issue;

          4.1.3     Any of the restrictive covenants contained in this Guaranty;

          4.1.4     Any of Franchisee's payment obligations that are more than forty- five (45) days past due;

          4.1.5     Any claims arising out of or related to fraud or misrepresentation by Personal Guarantor, Franchisee, or Franchisee's insolvency;

Case 3:25-cv-00261-MOC-DCK    Document 1-2    Filed 04/15/25    Page 13 of 23

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

4.1.6    Any claims relating to Franchisee's obligations on termination or expiration of this Guaranty;

4.1.7    Any claims relating to any Transfer of an interest in Franchisee, the Franchised Business or Franchisee's assets; or

4.1.8    Any matters involving danger, health or safety.

4.2    **Interpretation**.  The provisions of this Guaranty must be construed as independent of any other covenant or provision of this Guaranty. However, if a court or arbitrator of competent jurisdiction determines that any provisions are unlawful, that court or arbitrator is to modify or interpret the provisions to the minimum extent necessary to have them comply with the law. Notwithstanding any provision relating to the state laws by and under which this Guaranty must be governed and construed, all issues relating to arbitrability or the enforcement of the agreement to arbitrate in this Guaranty must be governed by the United States Arbitration Act (9 U.S.C. § 1 et seq.) and the Federal common law of arbitration. The arbitrator, and not any federal, state or local court, shall have exclusive authority to resolve any Dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability or formation of this Guaranty, including any claim of fraud in the inducement or that all or any part of the Guaranty is void or voidable. However, the preceding sentence shall not apply to the clause entitled "Class Action Waiver."

4.3    **Judgment**.  Judgment on an arbitration award may be entered in any court of competent jurisdiction. This judgment is binding, final and non-appealable.

4.4    **Failure to Appear**.  The arbitration and mediation provisions in this Article are self-executing and remain in full force and effect after the expiration or sooner termination of this Guaranty. If either party fails to appear at any properly noticed arbitration proceeding, notwithstanding failing to appear, an award may be entered against that party by default or otherwise.

4.5    **Class Action Waiver**.  Any proceeding (whether mediation, arbitration, trial by a court or jury, appeal or otherwise) must be brought in the parties' individual capacity and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff or similar proceeding ("Class Action"). Personal Guarantor and Franchisor expressly waive any ability to maintain any Class Action in any forum. Further, an arbitration proceeding between Franchisor and Personal Guarantor (or any of Franchisee's or Franchisor's affiliates and owners and guarantors) may not be consolidated with any other arbitration proceeding between them and any other franchisee, person or entity. Personal Guarantor hereby agrees not to seek joinder of any of its claims with those of any other party. The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action nor make an award to any person or entity not a party to the arbitration. Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. PERSONAL GUARANTOR AND FRANCHISOR UNDERSTAND THAT FRANCHISOR WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT, TO HAVE A JUDGE OR JURY DECIDE ITS CASE, AND TO BE PARTY TO A CLASS OR REPRESENTATIVE ACTION. HOWEVER, PERSONAL GUARANTOR AND FRANCHISOR UNDERSTAND AND CHOOSE TO WAIVE THAT RIGHT AND HAVE ANY CLAIMS DECIDED INDIVIDUALLY THROUGH ARBITRATION. It is Personal Guarantor's and Franchisor's joint business judgment that the limitations of this subsection make good business sense, because:

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

4.5.1    the mediation and arbitration procedures contemplated by this Guaranty (and which Personal Guarantor and Franchisor agree are the core methods for resolving Disputes) function most effectively on an individual case basis;

4.5.2    there are significant business and other factors present in each individual Personal Guarantor's situation which should be respected; and

4.5.3    the economic interests of lawyers on either side in class-wide or multiple plaintiff disputes, as well as the tendency to polarize positions makes accommodation and compromise, as a practical business matter, less easily achieved, which would be a serious detriment to Personal Guarantor's and Franchisor's business interests, as well as those of the entire Franchise System, in quickly, amicably and economically resolving any Dispute.

4.6    **Selection of Venue**.  Nothing contained in this Guaranty shall prevent Franchisor from applying to and obtaining from any court having jurisdiction, a writ of attachment, a temporary injunction, preliminary injunction and/or other emergency relief available to safeguard and protect Franchisor's interests. The parties expressly agree to the jurisdiction and venue of any court of general jurisdiction in Mecklenburg County, North Carolina and the jurisdiction and venue of the United States District Court for the Western District of North Carolina. Personal Guarantor acknowledges that this Guaranty has been entered into in the State of North Carolina, and that Franchisee, whose obligations Personal Guarantor is guaranteeing, is to receive valuable and continuing services emanating from Franchisor's headquarters in Huntersville, North Carolina, including, but not limited to, training, assistance, support and the development of the System. In recognition of such services and their origin, Personal Guarantor hereby irrevocably consents to the personal jurisdiction of the state and federal courts of North Carolina as set forth in this Section.

4.7    **Third Party Beneficiaries**.  Franchisor's officers, directors, shareholders, members, agents and/or employees are express third party beneficiaries of the provisions of this Guaranty, including the mediation provision set forth in this Section 4, each having authority to specifically enforce the right to mediate claims asserted against such person(s) by Personal Guarantor.

4.8    **Prior Notice of Claims**.  As a condition precedent to commencing an action for damages or for violation or breach of this Guaranty, Personal Guarantor must notify Franchisor within thirty (30) days after the occurrence of the violation or breach, and failure to timely give such notice shall preclude any claim for damages.

4.9    **No Right to Offset**.  Personal Guarantor shall not withhold all or any part of any payment to Franchisor or any of its affiliates on the grounds of Franchisor's alleged nonperformance or as an offset against any amount Franchisor or any of Franchisor's affiliates allegedly may owe Franchisee under this Guaranty or any related agreements.

4.10    **Injunctive Relief**.  The Franchised Business is intended to be one of a large number of businesses identified by the Proprietary Marks selling to the public the Approved Products and Approved Services associated with the Proprietary Marks. Consequently, a single Personal Guarantor's failure to comply with the terms of its Franchise Agreements is likely to cause irreparable damage to us, and damages at law would therefore be an inadequate remedy. On Personal Guarantor's breach or threatened breach of any of the terms concerning any matters referenced in Section 4.1, we may seek an injunction restraining the breach and/or a decree of specific performance (with recovery of reasonable attorneys' fees and costs incurred in obtaining equitable relief). We may do so without demonstrating or proving any actual damage. These equitable remedies are in addition to all other rights or remedies to which we may otherwise be entitled because of Personal Guarantor's breach of this Guaranty. We may seek this

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

relief without posting any bond or security. However, if a court of competent jurisdiction requires a bond or security, a bond or security for $1,000 is sufficient. Notwithstanding anything in this Guaranty to the contrary, Franchisor may seek injunctive relief in any jurisdiction that has jurisdiction over Personal Guarantor or any other party against whom the relief is sought. If injunctive relief is granted, Personal Guarantor's only remedy will be the court's dissolution of the injunctive relief. If the injunctive relief was wrongfully issued, Personal Guarantor expressly waives all claims for damages Personal Guarantor incurred as a result of the wrongful issuance.

5. **Jurisdiction and Venue**. Nothing contained in this Guaranty shall prevent Franchisor from applying to and obtaining from any court having jurisdiction, a writ of attachment, a temporary injunction, preliminary injunction, and/or other emergency relief available to safeguard and protect Franchisor's interests. The parties expressly agree to the jurisdiction and venue of any court of general jurisdiction in Mecklenburg County, North Carolina and the jurisdiction and venue of the United States District Court for the Western District of North Carolina. The parties acknowledge and agree that this Guaranty has been entered into in the State of North Carolina, and that Franchisee, whose obligations Personal Guarantor is guaranteeing, is to receive valuable and continuing services emanating from Franchisor's headquarters in Huntersville, North Carolina, including, but not limited to, training, assistance, support and the development of the System. In recognition of such services and their origin, you hereby irrevocably consent to the personal jurisdiction of the state and federal courts of North Carolina as set forth herein.

6. **Jury Trial Waiver. THE PARTIES HEREBY AGREE TO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR EQUITY, REGARDLESS OF WHICH PARTY BRINGS SUIT. THIS WAIVER SHALL APPLY TO ANY MATTER WHATSOEVER BETWEEN THE PARTIES HERETO WHICH ARISES OUT OF OR IS RELATED IN ANY WAY TO THIS PERSONAL GUARANTY OR THE FRANCHISE AGREEMENTS, THE PERFORMANCE OF EITHER PARTY, AND/OR YOUR PURCHASE FROM FRANCHISOR OF THE FRANCHISE, OPTION AND/OR ANY PRODUCTS OR SERVICES.**

7. **Waiver of Punitive Damages**. You waive, to the fullest extent permitted by law, any right to, or claim for, any punitive, exemplary, incidental, indirect, special or consequential damages (including, without limitation, lost profits) which you may have against Franchisor arising out of any cause whatsoever (whether such cause be based in contract, negligence, strict liability, other tort or otherwise) and agree that in the event of a Dispute, your recovery shall be limited to actual damages. If any other term of this Guaranty is found or determined to be unconscionable or unenforceable for any reason, the foregoing provisions shall continue in full force and effect, including, without limitation, the waiver of any right to claim any consequential damages.

8. **Limitation on Action**. You agree that no cause of action arising out of or under this Guaranty or the Franchise Agreements may be maintained by you unless brought before the expiration of one (1) year after the act, transaction or occurrence upon which such action is based or the expiration of one (1) year after you become aware of facts or circumstances reasonably indicating that you may have a claim against the Franchisor, whichever occurs sooner, and that any action not brought within this period shall be barred as a claim, counterclaim, defense or set-off. Notwithstanding anything to the contrary contained herein, all actions will be conducted on an individual, not a class-wide, basis and any proceeding between you, Franchisee, and Franchisor or its affiliates or employees may not be consolidated with any other proceeding between Franchisor and any other person or entity.

9. **Attorneys' Fees**. If the undersigned is in breach or default of any monetary or non-monetary material obligation under the Franchise Agreements or this Guaranty, or any related agreement

DocuSign Envelope ID: DC692299-A4E9-4724-91FA-376BAB9095E6

between Franchisee and Franchisor and/or Franchisor's affiliates, and Franchisor engages an attorney to enforce Franchisor's rights (whether or not formal judicial proceedings are initiated), Franchisee must pay all reasonable attorneys' fees, court costs and litigation expenses Franchisor incurs. If the undersigned or Franchisee institutes any legal action to interpret or enforce the terms of this Guaranty or the Franchise Agreements, and the claim(s) in such action is denied or the action is dismissed, Franchisor is entitled to recover Franchisor's reasonable attorneys' fees, and all other reasonable costs and expenses incurred in defending against same, and to have such an amount awarded as part of the judgment in the proceeding.

10. **Nonwaiver**. Franchisor's failure to insist upon strict compliance with any provision of this Guaranty and the Franchise Agreements shall not be a waiver of Franchisor's right to do so, any law, custom, usage or rule to the contrary notwithstanding. Delay or omission by Franchisor respecting any breach or default shall not affect Franchisor's rights respecting any subsequent breaches or defaults. All rights and remedies granted in this Guaranty shall be cumulative. Franchisor's election to exercise any remedy available by law or contract shall not be deemed a waiver or preclude exercise of any other remedy.

11. **Severability**. The parties agree that if any provisions of this Guaranty may be construed in two ways, one of which would render the provision illegal or otherwise voidable or unenforceable and the other which would render it valid and enforceable, such provision shall have the meaning that renders it valid and enforceable. The language of all provisions of this Guaranty shall be construed according to fair meaning and not strictly construed for or against either party. The provisions of this Guaranty are severable, and this Guaranty shall be interpreted and enforced as if all completely invalid or unenforceable provisions were not contained herein, and partially valid and enforceable provisions shall be enforced to the extent that they are valid and enforceable. If any material provision of this Guaranty shall be stricken or declared invalid, the parties agree to negotiate mutually acceptable substitute provisions. In the event that the parties are unable to agree upon such provisions, Franchisor reserves the right to terminate this Guaranty.

12. **Construction of Language**. Any term defined in the Franchise Agreements that is not defined in this Guaranty will be ascribed the meaning given to it in the Franchise Agreements. The language of this Guaranty will be construed according to its fair meaning, and not strictly for or against either party. All words in this Guaranty refer to whatever number or gender the context requires. If more than one party or person is referred to as you, their obligations and liabilities must be joint and several. Headings are for reference purposes and do not control interpretation.

13. **Successors**. References to "Franchisor" or "the undersigned," or "you" include the respective parties' successors, assigns or transferees.

14. **No Personal Liability**. You agree that fulfillment of any and all of Franchisor's obligations written in this Guaranty or in the Franchise Agreements or based on any oral communications which may be ruled to be binding in a Court of Law shall be Franchisor's sole responsibility and none of Franchisor's agents, representatives, nor any individuals associated with Franchisor's franchise company shall be personally liable to Franchisee or you for any reason.

IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND HEREBY, THE PARTIES HERETO HAVE CAUSED THIS GUARANTY TO BE EXECUTED EFFECTIVE THE DATE FIRST SET FORTH ABOVE.

**PERSONAL GUARANTOR:**

Joel Senger, Individually

**PERSONAL GUARANTOR:**

Amy Senger, Individually

**DocuSign**

## Certificate Of Completion

Envelope Id: DC692299A4E9472491FA376BAB9095E6                    Status: Completed
Subject: Complete with DocuSign: TD0023 - 0025 - Assignment and Assumption Agreement - 040424.docx
Source Envelope:
Document Pages: 17                    Signatures: 6                    Envelope Originator:
Certificate Pages: 5                    Initials: 0                    Shellee S. Lawson
AutoNav: Enabled                                                       107 Parr Dr
EnvelopeId Stamping: Enabled                                          Huntersville, NC  28078
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                    docusign@homefrontbrands.com
                                                                      IP Address: 71.218.70.71

## Record Tracking

Status: Original                    Holder: Shellee S. Lawson                    Location: DocuSign
    4/11/2024 12:10:56 AM                    docusign@homefrontbrands.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Amy Senger<br>amy.senger@thedesignery.com<br>Treasurer<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>CF010FEC9E264A3...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 74.128.170.32<br>Signed using mobile | Sent: 4/11/2024 12:13:21 AM<br>Viewed: 4/11/2024 12:14:11 AM<br>Signed: 4/11/2024 12:29:15 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 4/11/2024 12:14:11 AM<br>    ID: 014fbf5a-76b1-4b65-87be-d77f5392e870 | | |
| Jeffrey Dudan<br>jeff.dudan@homefrontbrands.com<br>President<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>*Jeffrey Dudan*<br>80D096B147D34C9...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 24.172.72.226 | Sent: 4/11/2024 12:13:22 AM<br>Viewed: 4/11/2024 7:21:18 AM<br>Signed: 4/11/2024 7:21:29 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 4/11/2024 7:21:18 AM<br>    ID: d0f75e2d-5738-41d7-a1e7-8d2f8af6c5bd | | |
| Joel Senger<br>joel.senger@thedesignery.com<br>President<br>Security Level: Email, Account Authentication (None) | *DocuSigned by:*<br>6273AA9050284EF...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 74.128.170.32<br>Signed using mobile | Sent: 4/11/2024 12:13:22 AM<br>Viewed: 4/11/2024 12:14:33 AM<br>Signed: 4/11/2024 12:15:02 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 4/11/2024 12:14:33 AM<br>    ID: 1a1f2960-8efe-4502-aa01-7ab013d0a3d0 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/11/2024 12:13:23 AM |
| Certified Delivered | Security Checked | 4/11/2024 12:14:33 AM |
| Signing Complete | Security Checked | 4/11/2024 12:15:02 AM |
| Completed | Security Checked | 4/11/2024 7:21:29 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Dudan Group (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Dudan Group:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: jennifer@dudangroup.com

**To advise Dudan Group of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at jennifer@dudangroup.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Dudan Group**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to jennifer@dudangroup.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Dudan Group**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to jennifer@dudangroup.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Dudan Group as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Dudan Group during the course of your relationship with Dudan Group.